IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Cr. No. 14-107(RCL) |
| | : | |
| NICHOLAS SLATTEN, | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO UNSEAL**

The government hereby opposes Slatten's Motion to Unseal Government's Pretrial Filing [Dkt. #647] ("Def's Mot."):

**I.    Introduction.**

In his motion to dismiss the indictment charging him with one count of first-degree murder, based on his claim that it was the product of vindictive prosecution, Slatten accused the government of making a misrepresentation in our correspondence with him. In response to that accusation, the government submitted a limited portion of its internal, deliberative materials to this Court under seal for *in camera*, *ex parte* review. The deliberative materials are protected by the work product privilege, and the government has not waived the privilege. Slatten's motion to unseal, therefore, should be denied.

**II.   Background.**

On October 17, 2013, the grand jury impaneled in this district returned a 33-count superseding indictment. It charged Slatten with 14 counts of voluntary manslaughter, in violation of 18 U.S.C. §§ 1112, 2, and 3261(a)(1); 15 counts of attempted manslaughter, in violation of 18 U.S.C. §§ 1113, 2, and 3261(a)(1); and one count of using and discharging a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c), 2, and 3261(a)(1) [Cr. No. 08-360, Dkt. #304]. It also charged co-defendants Paul Slough, Evan Liberty, and Dustin Heard with the same manslaughter, attempted manslaughter, and weapon charges as

Slatten, with one important exception: Count One of the superseding indictment charged Slatten alone with manslaughter of the driver of the white Kia, Ahmed Haithem Ahmed Al Rubia'y.

On November 18, 2013, Slatten moved to dismiss the superseding indictment on the grounds that the charges against him were barred by the applicable statute of limitations [Dkt. #315]. Slatten's motion was predicated on a statement in the D.C. Circuit's opinion that a 2009 motion by the government to dismiss the 2008 indictment against Slatten without prejudice had been granted, and therefore Slatten was "out of the case for now." *United States v. Slough*, 641 F.3d 544, 547 (D.C. Cir. 2011). After this Court denied Slatten's motion [Cr. No. 08-360, Dkt. # 387], Slatten petitioned the D.C. Circuit for mandamus, claiming that the superseding indictment violated that court's mandate [USCA Case #14-3007, Dkt. # 1482617]. On April 7, 2014, the D.C. Circuit granted Slatten's petition for mandamus. On April 18, 2014, the D.C. Circuit denied the government's petition for rehearing [USCA Case #14-3007, Dkt. #1489094], and on April 23, 2014, this Court dismissed the superseding indictment vis-à-vis Slatten [Cr. No. 08-360, Dkt. #428].

Accordingly, in order to hold Slatten accountable for his role in the Nisur Square massacre, the government decided to seek an indictment charging Slatten with first-degree murder, for which there is no statute of limitations. On May 8, 2014, the grand jury returned a one-count indictment charging Slatten with first-degree murder, in violation of 18 U.S.C. §§ 1111 and 3261, based on his killing of Al Rubia'y. (On October 22, 2014, the jury convicted Slatten of this offense.)

On May 9, 2014, the government contacted Slatten's counsel to discuss options that would "not put your client in a worse position than he was in under the superseding indictment."

2

May 9, 2014 e-mail from then-Criminal Division Chief Mary B. McCord to Thomas Connolly (Attached as Ex. A). The government explained that, before seeking the superseding indictment in 2013, the government had "carefully considered whether to charge Mr. Slatten with first-degree murder for the death of . . . Al Rubia'y" based on evidence that had been developed in support of that charge after the case was remanded from the Court of Appeals. *Id.* The government explained that it had, at that time, decided not to seek indictment on that charge "[i]n an exercise of prosecutorial discretion." *Id.*; *see also* May 16, 2014 letter from Ms. McCord to Thomas Connolly (the "Letter") (offering to dismiss the murder charge and proceed on the charges in the October 2013 superseding indictment if Slatten waived the statute-of-limitations defense) (attached as Ex. B).

On May 29, 2014, Slatten moved to dismiss the indictment, claiming that it was the product of vindictive prosecution. [Dkt. # 23]. In his motion, Slatten grossly mischaracterized the Letter. [Dkt. #23 at 28-30]. Among his many distortions, Slatten claimed: "[The Letter] is remarkable for the way it *misrepresents* the government's view of the evidence. Ms. McCord now asserts that the government has believed, since before it indicted Mr. Slatten on manslaughter last October, that the evidence against Mr. Slatten would also support a murder charge." [Dkt. #23 at 14 (emphasis added)]. Slatten also said: "If the government in fact considered first degree murder charges in the fall of 2013, presumably it will be able to substantiate that claim by producing the prosecution memorandum and any other documents discussing that charge in advance of the October 2013 Indictment." *Id.* at 14 n.2.

With Slatten having effectively accused then-Criminal Chief McCord of lying, the government aimed to assure the Court that there was nothing to the accusation – so we presented

to the Court relevant portions of our pre-decisional, internal, deliberative materials, namely excerpts from the Prosecution Memorandum. Those materials were submitted to the Court under seal, for its *ex parte*, *in camera* review. Government's Opposition to Slatten's Motion to Dismiss [Dkt. #43] at 3 n.3.

On June 5, 2014, the Court denied Slatten's Motion to Dismiss. [Dkt. # 51]. Significantly, in denying Slatten's motion, the Court did not rely on the government's prior consideration of the first-degree murder charge. *See generally* Mem. Op. [Dkt. #50]. Indeed, the Court did not even mention the point or note the *ex parte* materials.[1] Moreover, at no time during the litigation of his motion to dismiss did Slatten request access to the sealed deliberative materials. Slatten did not request access to these materials until April 9, 2015 – ten months after the issue had been resolved. Def's Mot. [Dkt. # 647].

### III. The government's internal, deliberative materials constitute work product; thus, they are privileged and should not be unsealed.

Under the work product doctrine, a lawyer may not be required to disclose those memoranda or notes which would reveal counsel's "mental impressions" about a matter in litigation. *Hickman v. Taylor*, 329 U.S. 495 (1947). In our circuit, "[t]he work-product doctrine simply does not distinguish between factual and deliberative material." *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1187 (D.C.Cir.1987). The doctrine is codified for federal criminal practice. *See, e.g.,* Fed. R. Crim. P. 16(a)(2) and (b)(2). In *Hickman*, the Supreme Court explained that, absent such protections, lawyers would refuse to record their impressions and assessments, such that "[i]nefficiency, unfairness and sharp practices would inevitably

---

[1] Accordingly, the government does not intend to rely on the deliberative materials to defend the Court's ruling in any appellate challenge by Slatten.

develop in the giving of legal advice and in the preparation of cases for trial." 329 U.S. at 511.

The work product doctrine applies equally to government attorneys conducting criminal investigations or prosecutions. *See, e.g*, *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369-72 (D.C. Cir. 2005) (recognizing government's work product privilege). As noted in Fed. R. Crim. P. 16(a)(2), "[e]xcept as Rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government." *See also United States v. Koskerides*, 877 F.2d 1129, 1133-34 (2d Cir. 1989) ("Rule 16 clearly recognizes 'the prosecution's need for protecting communications concerning legitimate trial tactics'"), quoting *United States v. Pfingst*, 490 F.2d 262, 275 n.14 (2d Cir. 1973); *United States v. Milikowsky*, 896 F. Supp. 1285, 1307-09 (D. Conn. 1994) (declining to provide defendants with review of government's "work product," based on prior version of Rule 16); *United States v. Gangi*, 1 F.Supp.2d 256, 263 (S.D.N.Y. 1998); *United States v. Fort*, 478 F.3d 1099 (9th Cir. 2007) (Rule 16(a)(2) extends to state police reports written prior to federal involvement; government does not waive protection of entire report by disclosing redacted versions).

At issue here are excerpts from the government's Prosecution Memorandum in this matter – internal, deliberative materials that are paradigmatically work product. And this type of work product, often described as "opinion" work product, "is virtually undiscoverable." *Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997), citing *Upjohn Co. v. United States*, 449 U.S. 383, 401–02 (1981).

Submitting the deliberative materials to the Court *ex parte*, for *in camera* review on a narrow point (*i.e.*, whether our then Criminal Chief McCord accurately represented that the

government had considered first-degree murder charges against Slatten), did not waive the work product privilege. Some disclosures of work product do not waive the privilege because the work product privilege "looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality." *In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir. 1982). The most important point considered in determining whether the work product privilege has been waived is the identity of the person or party to whom disclosure was made. If disclosure were made to a current or prospective opponent in litigation, a waiver is likely to have occurred. *See, e.g.*, *United States v. Nobles*, 422 U.S. 225, 239 n.14 (1975) (finding waiver of work product privilege where defense counsel sought to impeach witnesses by using notes of interviews conducted of those witnesses by a private investigator, acting at counsel's direction and in anticipation of the litigation); *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 605 (D.C. Cir. 2001) ("disclosing work product to a third party can waive protection if such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary") (citations, quotations omitted); *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1371-75 (D.C. Cir. 1984) (disclosure to the SEC under the "voluntary compliance" program waived privilege because there was "no question" that the SEC could become an adversary in the future).

On the other hand, disclosure to a non-opponent generally does not constitute a waiver:

> While voluntary disclosure waives the attorney-client privilege, it does not necessarily waive work-product protection. *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) (*AT & T*). As we explained in *AT & T*, the attorney-client privilege and the work-product doctrine serve different purposes: the former protects the attorney-client relationship by safeguarding confidential communications, whereas the latter promotes . . . the adversary process by insulating an attorney's litigation preparation from discovery. *Id.* Voluntary disclosure waives the attorney-client privilege because it is inconsistent with the confidential attorney-client relationship. *Id.* Voluntary disclosure does not

6

necessarily waive work-product protection, however, because it does not necessarily undercut the adversary process. *Id.*

*United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010); *see also Westinghouse Elec. v. Republic of the Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991) (work product privilege not waived unless disclosure "enable[s] an adversary to gain access to the information."); *In re John Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981) (to constitute a waiver, "disclosure must occur in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise protected material").

Here, the government's submission of material protected by the work product privilege to the Court did not waive the privilege. The fact that the deliberative materials were submitted to the Court under seal for *in camera*, *ex parte* review demonstrates that the government did not intend to disclose the materials to an opponent.[2] The government simply meant to reassure the Court that Slatten's ugly accusation against then-Criminal Chief McCord was baseless. That we shared our deliberative materials to give the Court a measure of comfort on that one point did not waive our privilege or otherwise open up our deliberative process to discovery by the defense. That is especially true here, since the point at issue – our previous consideration of the first-degree murder charge – played no role in the Court's denial of Slatten's vindictive prosecution motion.[3]

---

[2] The government hereby asks that the Court rule that we have not waived the privilege for purposes of this litigation. *See* Fed. R. Evid. 502(d) (With respect to materials protected by the work protect privilege, "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court – in which event the disclosure is also not a waiver in any other federal or state proceeding.").

[3] The cases relied on by Slatten are inapposite inasmuch as they do not address disclosure of materials protected by the work product privilege. Nevertheless, even if the standard posited by Slatten were applicable, there would still be no basis to unseal the deliberative materials, as none of the factors relied upon by Slatten support his

## IV.     Conclusion.

The government's internal, deliberative materials should not be unsealed. The materials

---

request: First, Slatten has no need for the deliberative materials [Dkt. # 647 at 4] and they are not "indispensable [Dkt. # 647 at 5], since the Court did not rely on them in denying his motion to dismiss and the government does not intend to rely on them in defending the Court's ruling in any future appellate challenge by Slatten. Second, the government has demonstrated a "compelling interest" in maintaining the deliberative materials under seal [Dkt. #647 at 6], namely its work product privilege, and, while the facts establishing Slatten's guilt have been disclosed to the public, *id.*, the government's deliberative process in this regard has not been made public.

If, however, the Court orders that the deliberative materials be disclosed to Slatten, we ask that the disclosure be subject to the previously entered protective orders in the related matter of *United States v. Slough*, 08-360 (RCL). *See* Dkt. #74; Dkt. #83; and Dkt. #93. *Cf.* Def's Mot. [Dkt. #647] at 7 ("to the extent that the Court finds there is any compelling interest that could be harmed by unsealing the Materials, there are a variety of alternatives to closure that would adequately protect that interest. The Court could, for instance, provide Mr. Slatten access to the Materials under a protective order that would govern and restrict any public disclosure of the information.").

are protected by the work product privilege and submitting them to the Court under seal for *in camera*, *ex parte* review did not waive that privilege.

                                                    Respectfully submitted,

                                                    _____/s/_____
                                                    Gregg A. Maisel
Chief, National Security Section
D.C. Bar Number 447902
Gregg.Maisel@usdoj.gov

Jay I. Bratt
Deputy Chief, National Security Section
Illinois Bar Number 6187361
Jay.Bratt2@usdoj.gov

T. Patrick Martin
Special Assistant United States Attorney
D.C. Bar Number 471965
Thomas.Martin@usdoj.gov

Anthony Asuncion
Special Assistant United States Attorney
D.C. Bar Number 420822
Anthony.Asuncion@usdoj.gov

Christopher Kavanaugh
Special Assistant United States Attorney
VA Bar Number 73093
Christopher.Kavanaugh@usdoj.gov

John Crabb Jr.
Assistant United States Attorney
N.Y. Bar No. 2367670
John.D.Crabb@usdoj.gov

David Mudd
Assistant United States Attorney
D.C. Bar No. 995154
David.Mudd2@usdoj.gov

United States Attorney's Office
National Security Section
555 4th Street, N.W., 11th Floor
Washington, D.C. 20530