UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 14-107 (RCL) |
| | : | |
| v. | : | |
| | : | |
| NICHOLAS ABRAM SLATTEN, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MOTION UNDER SPEEDY TRIAL ACT TO
EXTEND TIME FOR TRIAL TO ONE HUNDRED AND EIGHTY DAYS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court, pursuant to 18 U.S.C. §§ 3161(e) and (h), to extend the time for the retrial in this case from seventy days to one hundred and eighty days.

Additional time to prepare for a retrial in this case is necessary for at least two reasons. First, the government's evidence in this case will require approximately six weeks to present and involve approximately 50 witnesses, including experts and 15 witnesses from Iraq, who will face significant challenges traveling to the United States on short notice and are therefore less likely to be available if the trial proceeds within seventy days. Second, over three years have elapsed since a jury convicted Slatten of first-degree murder in this case. Because of the passage of time, the original team of prosecutors (with one exception), federal agents, and staff who prepared and tried this case in 2014 is no longer available. It is impractical for the new trial team, within a seventy-day window, to review and absorb the materials and discovery in this unusual and complex case, including the voluminous transcripts and exhibits associated with the prior three-month trial, and adequately prepare the government's case. For these reasons, and for any other reasons that may be elicited at a hearing on this motion, the government requests that the Court extend the time for the retrial in this case from seventy days to one hundred and eighty days.

### A. Relevant Legal Authority for Speedy Trial Act Calculation

The United States Court of Appeals for the District of Columbia Circuit issued the mandate in this case on November 16, 2017. As a result, and pursuant to Federal Rule of Appellate Procedure 41(c) and 18 U.S.C. § 3161(e), November 16, 2017, is the date that "the action occasioning the retrial becomes final . . ." and from which the Court should calculate the speedy trial deadline in this case. *See* 18 U.S.C. § 3161(e). According to the Speedy Trial Act, the new trial:

> [S]hall commence within seventy days from the date the action occasioning the retrial becomes final, except that the **court** retrying the case **may extend the period for retrial not to exceed one hundred and eighty days** from the date the action occasioning the retrial becomes final **if unavailability of witnesses or other factors resulting from passage of time shall make trial within seventy days impractical**.

*Id.* (emphasis added). In addition, the statute also provides that the court must exclude the periods of delay enumerated in 18 U.S.C. § 3161(h) from the calculation of the time limitations (seventy or one hundred and eighty days) provided in the statute for a retrial. *Id*.

At least two statutory exclusions of time are currently applicable to this case. Under 18 U.S.C. § 3161(h)(1)(F), the court must exclude from its time calculation up to ten days as a result of the delay associated with transporting the defendant to this jurisdiction. At the status hearing on November 21, 2017, the Court instructed the government to prepare and present the paperwork necessary to bring the defendant to this jurisdiction. That same day, the government submitted a request to the United States Marshals Service under 18 U.S.C. § 3621(d) to bring the defendant to this jurisdiction. As of the date of this filing, it does not appear that the defendant has arrived in this jurisdiction. Accordingly, the Court should exclude ten days from its trial deadline calculation. Based on this exclusion of time alone, the government calculates that the current deadline for trial

is either **February 5, 2018** (seventy days plus a ten-day exclusion of time), or **May 25, 2018** (one hundred and eighty days plus a ten-day exclusion of time).[1]

The government also submits, however, that the Court can delay the trial as necessary beyond February 5, 2018, or even May 25, 2018, because of the unusual and complex nature of this case. Pursuant to 18 U.S.C. § 3161(h)(7)(A) and (B)(ii), the court may, upon the request of the government, the defendant, or on its own motion, grant a continuance or delay the trial if the case is so unusual or complex that it is unreasonable to expect adequate preparation for trial within the time limits established by the statute. To exclude any such continuance or delay from the Speedy Trial Act time calculation, the Court must find on the record that the delay or continuance is necessary to meet the ends of justice and that taking such action outweighs the best interests of the defendant and the public in a speedy trial. *See* 18 U.S.C. § 3161(h)(7)(A). The Court has broad discretion to grant an exclusion of time when, in its view, the case's complexity requires that counsel have additional time to prepare in order to ensure a fair trial. *See United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985) ("The Act itself places broad discretion in the District Court to grant a continuance when necessary to allow further preparation."); *United States v. Rice*, 746 F.3d 1074, 1078 (D.C. Cir. 2014) ("The substantive balancing underlying the decision to grant such a continuance is entrusted to the district's court sound discretion.").

This Court previously found that this case should be classified as a "complex" case for trial under the Speedy Trial Act due to the extraordinary nature of the anticipated evidence and related logistical challenges. [Dkt. # 263 in *United States v. Slough, et al.*, Cr. No. 08-360].[2] This finding

---

[1] On December 1, 2017, the defendant filed a motion for release pending trial. [Dkt. # 693]. This motion also serves to exclude the time under the Speedy Trial Act until the Court rules on the motion. See 18 U.S.C. § 3161(h)(1)(D).

[2] On November 30, 2012, in Docket # 263 of the previously consolidated cases, this Court extended the time for trial under the Speedy Trial Act from seventy days to one hundred and eighty days and also excluded time and delayed the trial under 18 U.S.C. § 3161(h)(7)(A) and (B)(ii) due to the unusual and complex nature of this case.

is still applicable to the facts of this case for the retrial. Other courts have also excluded reasonable periods of time in cases similar in complexity to the instant case. *See, e.g.*, *United States v. Salad*, 779 F.Supp.2d 509, 513-14 (E.D.Va. 2011) (certifying the case as "complex" based on, among other grounds, the existence of extraterritorial evidence and the need for interpreters); *United States v. Hasan*, No. 2:10cr56, 2010 WL 9089148, at *1 (E.D.Va. May 21, 2010) (same). Similarly, other courts have made findings of "complexity" and excluded time based on the presence of a large amount of evidence requiring a substantial amount of time to review. *See, e.g.*, *United States v. Butz*, 982 F.2d 1378, 1381 (9th Cir. 1993) (exclusion of time justified in part because evidence of charged drug conspiracy was in form of "hundreds of hours" of conversations intercepted pursuant to a Title III wiretap); *United States v. Ditommaso*, 817 F.2d 201, 210 (2nd Cir. 1987) (case involving "hundreds of reels of [audio] tapes" found sufficiently complex to justify exclusion of time under § 3161).

### B. Government's Case for Slatten's Retrial

A jury previously convicted Slatten of one count first-degree murder after a joint trial with his codefendants for the September 16, 2007, shooting in Nisur Square, a busy traffic circle in Baghdad, Iraq. At least 14 unarmed Iraqi civilians were killed and 18 more were wounded during this shooting. The jury found that Slatten murdered Ahmed Al-Rubia'y, the driver of a white Kia vehicle, effectively setting into motion a massacre resulting in the death or serious wounding of 30 other unarmed and innocent civilians. The presentation of evidence at the prior trial lasted about 11 weeks with 76 witnesses, and the jury deliberated for another 7 weeks before reaching its verdict in October 2014.

On August 4, 2017, the court of appeals reversed Slatten's conviction, finding that the Court erred in excluding hearsay statements of one of Slatten's co-defendants -- Paul Slough -- in

which he admitted to shooting at the white Kia and stated that he was not sure whether he was the first one to fire during the incident but that he was not aware of any shots fired before his shots. *United States v. Slatten*, 865 F.3d 767, 809-810 (D.C. Cir. 2017). The court of appeals directed that Slatten receive a new trial, during which the Slough hearsay statements would be admissible under Federal Rule of Evidence 807, the residual hearsay exception. *Id*. at 810-11. As a result, the government must now prepare for a retrial, in which it must be prepared to address adequately Slough's self-serving and incredible hearsay statements.

To do so, the government expects it will take approximately six weeks (about half of the original trial) and involve approximately 50 witnesses -- including 15 witnesses from Iraq. Although the government has attempted to streamline its case, to meet its burden of proof, it will seek to establish that: (1) Slatten—not Slough—was the person who first shot Al-Rubia'y, the driver of the white Kia (again); (2) Slatten's convoy faced no threats (again); and (3) Slough's hearsay statements to the contrary are false. To do so, the government will need to introduce much of the evidence it presented at the first trial, including the evidence that directly contradicts material aspects of Slough's unsubstantiated hearsay statements. Only through this comparison will the jury will be able to conclusively determine that the defendant shot first without any justification whatsoever and Slough's hearsay statements are false.

1. **Slough's Hearsay Statements and Contrary Evidence**

Within eight days of the shooting, Slough gave statements to State Department investigators on five independent occasions. Even a cursory review of Slough's statements demonstrate why during Slatten's retrial the government must be allowed to address all of Slough's self-serving and false statements, as well as present any and all evidence that contradicts the same.[3]

---

[3] Specifically, Slough gave an oral statement on September 16, 2007, a sworn written statement on September 18, 2007, and oral statements on September 20, 23, and 24, 2007.

5

Otherwise, the jury will not have the ability to properly evaluate the credibility of the select Slough statements that Slatten apparently intends to rely on for his defense. The evidence of Slough's other statements, as well as the evidence to contradict and prove that Slough's statements about the shooting are false, is admissible at trial under both Fed. R. Evid. 806[4] as well as under Fed. R. Evid. 106,[5] the rule of completeness. *See*, *e.g.*, *United States v. McClain*, 934 F.2d 822, 833 (7th Cir. 1991) ("Rule 806 provides a means of attacking a declarant's credibility. It provides for impeachment of a hearsay declarant . . . ."); *Beech Aircraft Corp. v. Rainey*, 109 S.Ct. 439, 451 (1988) ("[W]hen one party has made use of a portion of a document . . . the material required for completeness is *ipso facto* relevant and therefore admissible under Rules 401 and 402.") (citation omitted); *United States v. Washington*, 12 F.3d 1128 (D.C. Cir. 1994), *cert. denied* 513 U.S. 828 (1994) ("The application of the rule of completeness is a matter for the trial court's discretion . . . and the court properly exercised that discretion by conditioning admission of the impeaching portions of the officer's prior statements on the admission of these prior statements in their entirety.").

    a. **The September 16, 2007 Statement**

In his initial statement on September 16, Slough told investigators:

> [T]he team came into and locked down the circle. Traffic was very heavy, but responded to their commands to stop. A white vehicle [Al-Rubia'y's white Kia] approached the team at a high rate of speed and would not stop despite his hand signals and throwing a water bottle. Other civilians tried to waive the vehicle down, but it still would not stop. SLOUGH engaged and hit the driver. An Iraqi Policeman, wearing blue button down shit and black

---

[4] Fed. R. Evid. 806 provides that "[w]hen a hearsay statement . . . has been admitted in evidence, the declarant's credibility may be attacked . . . by any evidence that would be admissible for those purposes if the declarant had testified as a witness. The court may admit evidence of declarant's inconsistent statement or conduct regardless of when it occurred or whether the declarant had an opportunity to explain or deny it."

[5] Fed. R. Evid. 106 provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part -- or any other writing or recorded statement -- that in fairness ought to be considered at the same time."

pants, began to push vehicle towards team.  SLOUGH engaged vehicle a second time and Iraqi Policeman ran away.  He then witnessed muzzle flashes from a shack, returned fire, and hit the individual.  The team continued to receive fire while the command vehicle was being towed.  SLOUGH believes he went through one M-4 [rifle] magazine and two hundred rounds from the 240 [machine gun].

Among other things, Slough did not tell the investigators that he had fired (i) his deadly M203 grenade launcher at Al-Rubia'y's white Kia, or (ii) his 240 machine gun at civilians in their vehicles both west and north of the circle.

### b. Slough's Subsequent Statements

Over the course of the next seven days, Slough gave several evolving and often contradictory statements to State Department special agents regarding the shooting incident. Among other things, Slough claimed that:

- after locking down the circle, he monitored his sector for approximately 10-15 seconds without incident;

- when he first saw Al-Rubia'y's white Kia, it was about 40 meters away and approaching the convoy at a speed he estimated as 40 miles per hour;

- the driver looked directly at Slough, **Slough made eye contact with the driver**, and the driver kept moving toward the motorcade;

- he was "not sure whether he was the first one to fire during this incident.  He is not aware of any shots being fired before his;"

- **at the same time** that he engaged Al-Rubia'y (versus later), he started receiving small arms fire from the shack, and he engaged the individual**s** (versus single individual);

- while the command vehicle was down, the convoy was still taking fire;

7

- while the command vehicle was down and being hooked up for a tow, he saw an individual pointing an AK-47 at the rear vehicle in the convoy and he shot the individual;

- while being towed out of the circle, he was engaged by small arms fire from a red bus stopped at the intersection, and he fired at the bus to eliminate the threat;

- he engaged two other threatening vehicles on the north side after leaving the circle

- he **did not** fire his M203 grenade launcher during the incident (September 20, 2007 statement); and

- he **did** fire his M203 grenade launcher during the incident, but only once, and he did not reload his M203 grenade launcher until after exiting the circle (September 23 and 24, 2017 statements).

As the Court knows, the government presented overwhelming evidence at the last trial that demonstrates that Slough's self-serving statements are false. The evidence includes, but is not limited to, testimonial and physical evidence establishing that: (i) Al-Rubia'y's white Kia was completely stopped before any shots were fired (multiple fact witnesses); (ii) the defendant fired first (Watson); (iii) once shot, Al-Rubia'y's white Kia creeped forward (multiple fact and expert witnesses); (iv) Slough fired his M203 at Al-Rubia'y's white Kia multiple times (multiple fact witnesses), reloading it in between (Murphy); (v) the convoy did not take incoming fire from the south or east, including during the time that the command vehicle was disabled due to Slough's own M203 grenade (multiple fact and expert witnesses); (vi) the convoy did not take incoming fire from the west, including from the red Tata bus stopped there (multiple fact witnesses, include civilian passengers on the bus); and (vii) the convoy did not take incoming fire or have to respond

to vehicle threats north of the circle, including the two vehicle referenced by Slough (multiple fact witnesses, including the victim drivers of the two cars Slough engaged).

### 2. No Threats or Attacks on Convoy at Nisur Square on September 16, 2007

In addition to proving that Slough's self-serving statements are false, during Slatten's retrial, the government also needs to establish that Slatten's convoy was not threatened or attacked. While Slatten is only charged with Ahmed Al-Rubia'y's murder -- the driver of the white Kia -- it is important for the jury to understand, as they evaluate Slatten's actions, that the Raven 23 convoy did not face any threats (real or imagined) around Nisur Square that day. Indeed, proving that there was no threat or organized attack against the convoy anywhere around Nisur Square corroborates and bolsters the anticipated trial evidence that Al-Rubia'y and his white Kia posed absolutely no threat to the convoy. This evidence will help the government meet its burden by proving, once again, that Slatten did not act in self-defense; rather, that he acted willfully, deliberately, maliciously, and with premeditation and malice aforethought when he shot and killed Al-Rubia'y.

### C. Factors that Support the Extension of Time for Retrial

As detailed in the explanation provided above of the anticipated government's case during retrial, this complex case arising out of a shooting in Baghdad, Iraq, will involve the testimony of approximately 50 witnesses -- including about 15 witnesses from Iraq. The government anticipates that trial preparation will involve at least one international trip to Iraq in order to prepare witnesses for their testimony and to help secure their appearance for trial. Trial preparation for these witnesses is particularly time-consuming as it requires the use of an interpreter. In addition, the government may request a Rule 15 deposition of Al-Rubia'y's surviving father, which may require a separate international trip for all counsel. This case will also require the government to make a

number of domestic trips in the United States to prepare the rest of the witnesses for trial, the majority of which reside outside the Washington, D.C. area. While the government has begun but not yet finished the process of making contact with the necessary Iraqi witnesses, once a trial date is set all communications and arrangements for travel will require an interpreter and a cumbersome logistical process that will be extremely time consuming. Therefore, if trial were to start within seventy days, it is likely that the government would not have all of its necessary witnesses available for trial. Due to this short timeframe, the government would also not be able to effectively prepare its witnesses for trial.

The passage of time also makes it harder and impractical for the government to be ready for trial within seventy days. Because over three years have elapsed since the jury convicted Slatten and his co-defendants, the original team of prosecutors, federal agents and staff is no longer available to retry this case. Similarly, the personnel at the U.S. Embassy in Baghdad, Iraq --who helped the government obtain evidence, contact the necessary witnesses, and arrange for the travel of those witnesses -- has also changed. While some of the original trial team members remain, all of the new team members need to learn the case to prepare for the retrial, and the new prosecutor(s) and agents need sufficient time to familiarize themselves not only with the prior evidence and discovery, but also with the transcripts and exhibits from the last trial. For an eleven-week trial, this is a monumental task. These factors also support an extension of time under the Speedy Trial Act for the retrial in this case.

For all of these reasons, the government respectfully requests that the Court extend the time for retrial in this case from seventy days to one hundred and eighty days, and then proceed to set a trial date sometime in May 2018. After further consultation with defense counsel, the government will propose a specific trial date in May at the next hearing.

In addition to the extension of time for the retrial available under 18 U.S.C. § 3161(e), the Court also has the ability under the Speedy Trial Act to delay the trial pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and (B)(ii). As discussed above, this Court has previously determined that a delay of the trial under 18 U.S.C. §§ 3161(h)(7)(A) and (B)(ii) was appropriate in this case to allow the parties the proper time necessary to prepare for trial. Indeed, the same factors that support an extension of time for the retrial under 18 U.S.C. § 3161(e) also support a finding by this Court that the interests of justice once again outweigh the interest of the public and the defendant in a speedy trial and support a delay of the retrial in this case so that the parties can adequately prepare for trial. For this reason, the government also requests that the Court designate this case as "complex" under the Speedy Trial Act, and exclude the time between November 21, 2017, and the next status hearing on December 15, 2017, from the trial deadline calculation under the statute.

### D. Conclusion

For the foregoing reasons, the government respectfully request that the Court: (i) extend the trial deadline under the Speedy Trial Act in this case from seventy days to one hundred and eighty days under 18 U.S.C. § 3161(e); (ii) designate the case as complex under 18 U.S.C. §§ 3161(h)(7)(A) and (B)(ii) and exclude the time between November 21, 2017 and December 15, 2017 from the trial deadline calculation; (iii) exclude 10 days from the trial deadline calculation for transportation of the defendant to this jurisdiction pursuant to 18 U.S.C. § 3621(h)(1)(F); and (iv) exclude from the trial deadline calculation the time between the filing of defendant's Motion for Release Pending Trial on December 1, 2017, through the next status hearing on December 15, 2017. A proposed order for the Court's consideration is attached to this motion.

        Respectfully submitted,

        JESSIE K. LIU
        United States Attorney
        D.C. Bar No. 472845


By:            /s/
        T. PATRICK MARTIN
        D.C. Bar Number 471965
        FERNANDO CAMPOAMOR-SANCHEZ
        D.C. Bar Number 451210
        Assistant United States Attorneys
        National Security Section
        United States Attorney's Office
        555 4th Street NW, 11th Floor
        Washington, D.C. 20530
        202-252-7698
        fernando.campoamor-sanchez@usdoj.gov

## Certificate of Service

    I certify that, by virtue of the Court's ECF system, a copy of the foregoing Motion Under Speedy Trial Act to Extend Time for Trial to One Hundred and Eighty Days has been sent to counsel for the defendant on December 4, 2017.

                                      /s/ Fernando Campoamor-Sánchez
                                      Fernando Campoamor-Sánchez
                                      Assistant United States Attorney